# AFFIDAVIT

Your Affiant, Janna Penfield, being duly sworn, deposes and states:

1.    Your Affiant is a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), United States Department of Justice, and has been so employed since August 2018. Prior to becoming a Special Agent with ATF, I was a United States Probation Officer with the United States Probation Department through the Southern District of Ohio from October 2014 through January 2018. Additionally, from August 2007 through October 2014, I was a Parole Officer through the State of Ohio, which included a special assignment position with the United States Marshal Service as a Task Force Officer on the Southern Ohio Fugitive Apprehension Strike Team. I have completed the Federal Criminal Investigator Training Program and the ATF Special Agent Basic Training at the Federal Law Enforcement Training Center in Glynco, Georgia. I have also completed the Initial Pretrial and Probation Training Program at the Federal Law Enforcement Training Center in Charleston, South Carolina, and the State of Ohio Parole Academy in Columbus, Ohio. In addition to the firearms, arson, and explosives related training received in these courses, your Affiant has also conducted and participated in numerous investigations involving firearms, firearms trafficking, and narcotics.

2.    This affidavit is being submitted in support of an application for a criminal complaint against Petrocelli ROBERTSON for knowing he had been previously convicted of a crime or crimes punishable by a term of imprisonment exceeding one year, knowingly possessed a firearm, and the firearm was in and affecting interstate or foreign commerce, in violation of 18 U.S.C. § 922(g)(1).

3. The facts set forth within this affidavit come from your Affiant's own personal involvement with the investigation, as well as information provided by other law enforcement officers and reports. The information outlined below does not contain all details or all facts of which I am aware relating to this investigation but rather is provided for the limited purpose of establishing probable cause ROBERTSON committed the offenses.

## PROBABLE CAUSE

### A. 2020 Through May 27, 2021

4. In 2020, the Central Ohio Human Trafficking Task Force (HTTF) began conducting an investigation into Petrocelli ROBERTSON's potential human trafficking offenses in the Southern District of Ohio. During the investigation, information was obtained that indicated ROBERTSON was also involved in trafficking narcotics. Their investigation has been ongoing since 2020.

5. In April 2021, HTTF received information that an active warrant through the State of Ohio was issued for ROBERTSON for a parole violation. On April 13, 2021, CPD SWAT was notified that ROBERTSON was residing at 199 North Oakley Avenue, Columbus, Ohio. On that same date, CPD SWAT surrounded 199 North Oakley Avenue, Columbus, Ohio and ordered ROBERTSON to exit the residence. After several announcements, ROBERTSON ultimately exited the residence and was taken into custody. At the time of the arrest, a cellular telephone was recovered from ROBERTSON.[1]

6. Following ROBERTSON's arrest, HTTF began monitoring the calls ROBERTSON was making from the Franklin County Jail. Throughout the initial analysis of these jail calls, investigators noticed ROBERTSON kept calling the telephone number 614-515-

---

[1] On April 21, 2021, CPD Detectives with HTTF obtained a search warrant for ROBERTSON's cellular telephone and ultimately were able to extract all of the logical and physical electronic evidence.

0597, later identified as Jeanette Limoli. Investigators learned Limoli has been a part of ROBERTSON's life for years because she helped care for ROBERTSON when he was younger. ROBERTSON refers to Limoli as "mom" even though she is not his birth mother.

7. On April 17, 2021, ROBERTSON placed a call to Limoli at the above referenced telephone number. During this conversation, ROBERTSON asked Limoli if he received any messages on his phone. Limoli informed ROBERTSON that his phones were "in my drawer" and "turned off "(powered down). HTTF believed at least one of these telephones referenced in this conversation was the other telephone number HTTF had knowledge of for ROBERTSON (614-732-8867), which was possibly being stored at Limoli's residence. HTTF investigators also knew ROBERTSON had several cellular telephones in his possession at one time and ROBERTSON was known to switch telephone numbers frequently. Your Affiant has observed ROBERTSON frequently switching phone numbers as well.[2]

8. Investigators were also able to determine ROBERTSON's connection to Limoli's residence, 386 South Huron Avenue, Columbus, Ohio. When ROBERTSON was initially released from prison in May 2020 after serving a prison sentence for Kidnapping, ROBERTSON provided the residence of 386 South Huron Avenue, Columbus, Ohio to his Adult Parole Officer. ROBERTSON was approved by the Adult Parole Authority (APA) to reside at this residence with Limoli. Additionally, at the time of ROBERTSON's release from prison, ROBERTSON obtained an Identification Card through the Ohio Bureau of Motor Vehicles and provided them with the address of 386 South Huron Avenue. In September 2020, APA conducted a home visit at this same residence and located narcotics in the residence.

---

[2] Since January 2022, Investigators are aware ROBERTSON has had at least five different telephone numbers.

9. Upon receiving the results of the search warrant from the cellular telephone seized from ROBERTSON when he was arrested on April 13, 2021, investigators reviewed the content of the phone. The phone contained a photograph of ROBERTSON, dated March 19, 2021, holding a stack of suspected U.S. Currency. In this photograph ROBERTSON is wearing a red shirt, jeans, and a pair of red shoes. Additional analysis of the telephone data revealed text message correspondence between ROBERTSON and others who communicate about "fire" (which is a known slang term for heroin/fentanyl). More specifically, ROBERTSON received an incoming text message from an individual who identified themselves as "Tiffany" who texted " Hey bible (a known nickname for ROBERTSON) this is Tiffany I was seeing is there anyway u can front me a 20 so I can't let my dude try it he got some stimuless check but he wants some good stuff so I was going to let him try it so he will spend it all with y and pay it back." Based upon training and experience, investigators believe this text message is asking if ROBERTSON will provide a sample of narcotics to Tiffany in order for her boyfriend (name unknown) to determine if the product is worth purchasing more from ROBERTSON for further distribution. Another text message states "Bible? U got ice (methamphetamine)?" One other text message states "what up I got that 135$ from that 3pack earlier and I need another one and about a G (one gram) of that good hardware (narcotics) my good sir." A follow up message is sent from this same individual to ROBERTSON stating: "What up you want this Bro, 30.cal Highpoint." This text message string also includes a photograph of a black firearm with an extended magazine attached.

10. On April 13, 2021, while in the booking area of Franklin County Jail, ROBERTSON placed several calls to Destiny Quillen, a known significant other of ROBERTSON's, to discuss the reason behind his arrest. ROBERTSON asks Quillen why she

didn't get that bag and clarifies that it is the Tommy Hilfiger bag. Quillen explains she is concerned they (law enforcement) would follow her. Quillen tells ROBERTSON she is on her way to get the bag (specific location not mentioned). Quillen asks if ROBERTSON wants Quillen to grab his Jordans (shoes), to which ROBERTSON says, "take everything out of there." ROBERTSON and Quillen discuss how "they" (law enforcement) only got one phone from the house (on North Oakley), the black one. Quillen tells ROBERTSON "they" (law enforcement) kept calling a telephone and Quillen was trying to tell law enforcement it was her child's phone. ROBERTSON and Quillen reference two bags, one duffle bag and a book bag that contains cash (U.S. currency). Quillen tells ROBERTSON all the money in the bag should get him out. ROBERTSON tells Quillen to lock the door. ROBERTSON tells Quillen he didn't want them (law enforcement) bust in the door. Quillen tells ROBERTSON she gave "mom" (Jeanette Limoli) all ROBERTSON's stuff. ROBERTSON ends the call by telling Quillen to put money on his books and take whatever else she needs for money.

11. After HTTF received information through the above referenced jail calls, surveillance, and phone downloads, a state search warrant through the Franklin County Municipal Court (signed by the Honorable Judge James E. Green) was obtained for the residence of 386 South Huron Avenue, Columbus, Ohio (the residence of Jeanette Limoli) in order to search for documents related to ROBERTSON, other paperwork, ledgers pertaining to ROBERTSON's illicit activities, and the additional cellular telephones as referenced in the jail calls between ROBERTSON and Limoli.

12. Upon securing the residence, investigators searched inside the residence. In an upstairs bedroom, investigators found clothing and personal items belonging to ROBERTSON. Additionally, within this bedroom, several safes were found and forced open to locate any

documents, paperwork related to ROBERTSON, or ledgers, as mentioned above. Inside one safe, investigators located a large amount of U.S. Currency, several firearms, ammunition, and a wallet with ROBERTSON's Ohio Identification Card. Investigators obtained a second search warrant for U.S. currency, narcotics violations, and firearms. This warrant was also obtained through the Franklin County Municipal Court and signed by the Honorable James E. Green. Within the safe, HTTF seized the following items: seven (7) handguns, ammunition, magazines (some high capacity) $103,598, ROBERTSON's ID card, and a Cash App credit card with "$Biblereup" printed on the front. Additionally, within this bedroom, investigators found three (3) rifles, one (1) handgun, more ammunition, and several other high-capacity magazines. Other personal items belonging to ROBERTSON were photographed as items of evidence. More specifically, the red shoes referenced in paragraph #9 of this Affidavit were located within this same bedroom. Other clothing of ROBERTSON's was also located inside this same bedroom. An initial interview with Limoli revealed that she allowed ROBERTSON to store his property at this location.

13. The seized guns were identified as follows: Kahr Arms, model CM9, 9mm pistol bearing serial number 108390; Glock, model 40, 10mm pistol bearing serial number BELY681; Sig Sauer, model P320, 9mm pistol bearing serial number 58A128272; Glock, model 20, 10mm pistol bearing serial number BPMV817, Glock, model 23, .40 caliber pistol bearing serial number BHXH270, Glock, model 34, 9mm pistol bearing serial number BHLP933; Glock, model 17, 9mm pistol bearing serial number HSR891; Romarm Mini Draco, 7.62X39mm pistol bearing serial number PE-4854-2018RO; Intratec, model DC-9, 9mm pistol bearing serial number D082551; Romarm, micro Draco, 7.62X39mm pistol bearing serial number PMD-

22646-20ROA; and Anderson Manufacturing, model AM-15, 5.56mm rifle bearing serial number 18156661.

14. On May 28, 2021, investigators conducted an interview with Limoli. At the beginning of the interview, Limoli was asked how the firearms, money, and additional cellular telephones got into her house. Limoli explained that the day ROBERTSON was arrested (April 13, 2021), she received a telephone call from Destiny Quillen who indicated she brought the telephones over to Limoli's residence while Limoli was at work. Limoli further advised at some point prior to ROBERTSON's arrest, he asked if he could bring some things over to her residence, to which Limoli agreed. Throughout the interview, Limoli referred to ROBERTSON as "P." Limoli was shown a photograph of ROBERTSON and Limoli verified that was who she referred to as "P." Limoli stated recently that three males brought over all his containers of clothes because ROBERTSON did not want to lose it all. Initially, Limoli agreed because she was informed that ROBERTSON was only being held in custody for a parole violation and would be released soon. Limoli further described that over the past few months, she would allow ROBERTSON inside her residence to shower and get something to eat. Limoli explained the same bedroom where the above referenced firearms and currency were seized from is the same bedroom ROBERTSON used to sleep in when he lived at her residence. Limoli confirmed she cared for ROBERTSON since he was 13 years old due to his mother passing away and his father being ill. Limoli indicated when she was at work, her neighbors informed her things were happening at her house (possibly the sale of narcotics). Limoli admitted she witnessed ROBERTSON meet with cars that pulled into her driveway and leave shortly after. Limoli further explained when she was cleaning out her basement, she found narcotics that were not hers and believed they belonged to ROBERTSON when he lived with her. When asked about

the safe inside the bedroom, Limoli denied possession of that specific safe (where the handguns, wallet, and U.S. currency were located). Limoli stated she questioned ROBERTSON about the safe and he ultimately admitted it was his.

15.     In October 2022, your Affiant and ATF Task Force Officers (TFOs) Orick and Wright became aware of the HTTF investigation into ROBERTSON. They were informed of the search warrant executed on May 27, 2021, during the HTTF investigation, at 386 South Huron Avenue, Columbus, Ohio along with the items seized from the search warrant.

16.     As referenced above, ROBERTSON was on post-release control through the State of Ohio for Kidnapping (Franklin County Court of Common Pleas, Docket Number 06CR-6275) at the time the search warrant was executed and was serving a prison sanction time of 270 days as a result of a post-release control violation. Additionally, it should be noted that ROBERTSON is on supervised release through the United States Probation Office in the Southern District of Ohio after being released from federal imprisonment for a conviction of Conspiracy to Distribute Crack Cocaine (United States District Court for the Southern District of Ohio, Docket Number 2:07CR-45). As a result of these convictions, ROBERTSON is prohibited from possessing a firearm or ammunition.

### B. November 15, 2022 - Interstate Nexus Determination

17.     On November 15, 2022, Special Agent Janna Penfield spoke with ATF Interstate Nexus Expert Special Agent Jason Burns who was informed about the aforementioned firearms and provided a verbal determination that Kahr Arms, Glock, Sig Sauer, Romarm, Intratec, or Anderson Manufacturing firearms are not manufactured in the State of Ohio. Thus, the aforementioned firearms must have traveled in interstate commerce to be found in the State of

Ohio. S/A Burns has not personally examined the firearms due to the firearms still being in evidence at the Columbus Police Department Property Room.

## C. CONCLUSION

1.  Based upon the above listed facts and circumstances, Your Affiant believes and asserts that there is probable cause to believe on May 27, 2021, ROBERTSON did, knowing he had been previously convicted of a crime or crimes punishable by a term of imprisonment exceeding one year, knowingly possessed a firearm, and the firearm was in and affecting interstate or foreign commerce, in violation of 18 U.S.C. § 922(g)(1).

2.  The above violation was committed in the Southern District of Ohio, Eastern Division. Your Affiant requests that an arrest warrant be issued for Petrocelli ROBERTSON.

Janna Penfield, Special Agent
Bureau of Alcohol, Tobacco, Firearms and Explosives

This Affidavit was sworn to by the Affiant by telephone after a PDF was transmitted by email, per Crim R. 41(d)(3) on this 16th day of November 2022.



Elizabeth A. Preston Deavers
United States Magistrate Judge